UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF ILLINOIS

| | |
|---|---|
| VIRGIL L. L.,[1] | ) |
| | ) |
| Plaintiff, | ) |
| | ) |
| vs. | ) Civil No. 3:19-cv-1183-GCS[2] |
| | ) |
| COMMISSIONER OF SOCIAL SECURITY, | ) |
| | ) |
| Defendant. | ) |

## MEMORANDUM and ORDER

**SISON, Magistrate Judge:**

In accordance with 42 U.S.C. § 405(g), the pro se plaintiff seeks judicial review of the final agency decision denying his application for Supplemental Security Income ("SSI") Benefits pursuant to 42 U.S.C. § 423.

### PROCEDURAL HISTORY

Plaintiff applied for SSI in June 2012, alleging a disability onset date of May 9, 2009. After holding an evidentiary hearing, an ALJ denied the application in May 2014. Plaintiff sought judicial review, and the case was remanded by consent of the parties. A different ALJ held another evidentiary hearing and denied the application on August 23, 2018. (Tr. 392-412). The August 2018 decision is the final agency decision subject to

---

[1] Plaintiff's full name will not be used in this Memorandum and Order due to privacy concerns. *See* FED. R. CIV. PROC. 5.2(c) and the Advisory Committee Notes thereto.

[2] This case was assigned to the undersigned for final disposition upon consent of the parties pursuant to 28 U.S.C. §636(c). *See* Docs. 12 & 19.

judicial review. Plaintiff exhausted administrative remedies and filed a timely complaint with this Court.

## ISSUE RAISED BY PLAINTIFF

Plaintiff raises the following issues:

1. The transcript of the first hearing was inaccurate, as he pointed out in Ex. 24E.

2. The ALJ was able to look back at the first hearing and cherry-pick which evidence to consider; Plaintiff alleges that the weight given to the opinions of Drs. Reid, Leung, Munoz, and Vincent was "classic cherry-picking."

3. The jobs identified by the vocational expert (VE) and accepted by the ALJ require driving and customer contact, but the RFC assessment limited Plaintiff to no driving as a job requirement and no interaction with the public; and there was no "dialogue" to establish that he could work for an 8 hour day.

4. Plaintiff would be considered disabled under the Grids.

5. The second decision was faulty and cannot stand.

## APPLICABLE LEGAL STANDARDS

To qualify for SSI, a claimant must be disabled within the meaning of the applicable statutes.[3] Under the Social Security Act, a person is disabled if he has an "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than twelve

---

[3] The statutes and regulations pertaining to DIB are found at 42 U.S.C. § 423, et seq., and 20 C.F.R. pt. 404. The statutes and regulations pertaining to SSI are found at 42 U.S.C. §§ 1382 and 1382c, et seq., and 20 C.F.R. pt. 416. As is relevant to this case, the DIB and SSI statutes are identical. Furthermore, 20 C.F.R. § 416.925 detailing medical considerations relevant to an SSI claim, relies on 20 C.F.R. Pt. 404, Subpt. P, the DIB regulations. Most citations herein are to the DIB regulations out of convenience.

months."   42 U.S.C. § 423(d)(1)(a).

To determine whether a plaintiff is disabled, the ALJ considers the following five questions in order: (1) Is the plaintiff presently unemployed? (2) Does the plaintiff have a severe impairment? (3) Does the impairment meet or medically equal one of a list of specific impairments enumerated in the regulations? (4) Is the plaintiff unable to perform his former occupation? and (5) Is the plaintiff unable to perform any other work?   20 C.F.R. § 404.1520.

An affirmative answer at either step 3 or step 5 leads to a finding that the plaintiff is disabled.   A negative answer at any step, other than at step 3, precludes a finding of disability.   The plaintiff bears the burden of proof at steps 1–4.   Once the plaintiff shows an inability to perform past work, the burden then shifts to the Commissioner to show the plaintiff's ability to engage in other work existing in significant numbers in the national economy.   *See Zurawski v. Halter*, 245 F.3d 881, 886 (7th Cir. 2001).

It is important to recognize that the scope of judicial review is limited.   "The findings of the Commissioner of Social Security as to any fact, if supported by substantial evidence, shall be conclusive. . . ." 42 U.S.C. § 405(g).   Thus, this Court must determine not whether the plaintiff was, in fact, disabled at the relevant time, but whether the ALJ's findings were supported by substantial evidence and whether any errors of law were made.   *See Lopez ex rel. Lopez v. Barnhart*, 336 F.3d 535, 539 (7th Cir. 2003).   The Supreme Court defines substantial evidence as "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion."   *Biestek v. Berryhill*, 139 S. Ct. 1148, 1154 (2019) (internal citations omitted).

In reviewing for "substantial evidence," the entire administrative record is taken into consideration, but this Court does not reweigh evidence, resolve conflicts, decide questions of credibility, or substitute its own judgment for that of the ALJ. *See Burmester v. Berryhill*, 920 F.3d 507, 510 (7th Cir. 2019). However, while judicial review is deferential, it is not abject; this Court does not act as a rubber stamp for the Commissioner. *See Parker v. Astrue*, 597 F.3d 920, 921 (7th Cir. 2010), and cases cited therein.

## THE DECISION OF THE ALJ

The ALJ followed the five-step analytical framework described above. She determined that Plaintiff had not worked at the level of substantial gainful activity since the alleged onset date. The ALJ found that Plaintiff had severe impairments of degenerative disc disease of the lumbar spine, osteoarthritis of the right hip, generalized anxiety disorder, depressive disorder, and somatic symptom disorder.

The ALJ found that Plaintiff had the RFC to do light work as defined by 20 C.F.R. § 416.967(b), limited to no crawling, crouching, kneeling, or climbing of ladders, ropes or scaffolds; only occasional climbing of ramps or stairs, stooping, twisting of his back, and balancing; only occasional use of foot controls; no exposure to environments with hazards; and no driving as part of the job. He was able to understand, remember, and carry out instructions for simple, routine, repetitive tasks and could make simple, work-related decisions in a routine environment with no more than occasional changes. He was limited to no interaction with the public as part of the job and no more than frequent interaction with coworkers.

Based on the testimony of a vocational expert, the ALJ found that Plaintiff was not able to do his past relevant work as a stocker or sale attendant, but he was not disabled because he was able to do other jobs that exist in significant numbers in the national economy.

### THE EVIDENTIARY RECORD

The Court has reviewed and considered the entire evidentiary record in formulating this Memorandum and Order. The following summary of the record is directed to the points raised by Plaintiff.

**1.    Agency Forms**

Plaintiff was born in 1968 and was 49 years old on the date of the ALJ's decision. (Tr. 182). In 2012, he said he was disabled because of a back injury which caused him to stop working in 2009. (Tr. 194).

**2.    Evidentiary Hearings**

Plaintiff was not represented by an attorney at either hearing.

At the first hearing in April 2014, Dr. Munoz testified as an independent medical expert based on a review of the medical records. He testified that Plaintiff had back pain and osteoarthritis of the right hip, and that his impairments did not meet or equal a Listing. He said Plaintiff was limited to light work with no bending or twisting, limited to only frequent climbing, balancing, stooping, kneeling, crouching and crawling. He was able to stand/walk for 6 hours out of an 8-hour day. He did not need a sit/stand option. (Tr. 43-48).

Dr. Reid testified as an independent psychological expert. He said that the

medical records reflected a diagnosis of anxiety. An April 2014 record from Dr. Granger stated "anxiety, still has agoraphobia." Dr. Reid found this "interesting" as Dr. Granger's prior records did not document symptoms of anxiety or agoraphobia. The report of a consultative psychological exam gave a diagnosis of generalized anxiety disorder. He testified that Plaintiff should be limited to simple, repetitive, routine work with only occasional interaction with the public. (Tr. 57-60).

Plaintiff stated that his doctor, Dr. Granger, said he had additional restrictions, but this was not in his records. The ALJ gave him additional time to get a report from his doctor. Because he was unrepresented, the ALJ printed the reports of the consultative exams so that he could give them to his doctor. The ALJ also pointed out that the record was on a computer disc that had previously been given to Plaintiff. (Tr. 66-69).

The second hearing was in November 2017. Plaintiff testified that he lived alone in a single-family residence. He was able to go up and down the stairs but had to take his time. He had medical insurance through the state. (Tr. 430-431).

Plaintiff was able to drive but tried not to get on the highway or on bridges because that caused him anxiety. (Tr. 432).

Plaintiff obtained an associate degree in radio broadcasting and accounting in 2017. His classes were on-line. He went to campus for some exams and attended a graduation ceremony. His grades were good. He did not have trouble communicating with the teachers or other students. (Tr. 434-438).

Plaintiff testified that he spent his time watching TV or looking at things on the internet. He prepared simple meals and did household chores. His friend took him to

the grocery store when he had to do a big shopping trip. (Tr. 442-444).

Plaintiff said he could not work because of pain in his back and hip and because of anxiety. He took medication prescribed by Dr. Granger. The doctor had not suggested any other treatment. Plaintiff said he had bulging degenerative discs and arthritis in his back and hip. (Tr. 448-450).

A VE testified that a person with Plaintiff's RFC could not do his past work, but he could do the jobs of marking clerk, shipping weigher, and photocopy machine operator. (Tr. 457-459).

### 3. Relevant Medical Records

An MRI done in November 2008 showed minimal L4-5 and L5-S1 disc bulges without central or foraminal canal stenosis; mild multi-level facet osteoarthrosis; and mild straightening of the lumbar curvature. (Tr. 280-281).

Plaintiff was treated by a chiropractor for low back pain from February to April 2009. After the final evaluation, the chiropractor said that Plaintiff was limited to light duty work. (Tr. 282-285).

Dr. Ayers saw Plaintiff three times between November 2011 through May 2012. The records are illegible. (Tr. 289-291). Dr. Susan Reynolds in the same office saw Plaintiff in December 2012 for anxiety and low back pain. Xanax helped to control his anxiety. On exam, he had tenderness and mild pain with motion of the lumbar spine. Gait and station were intact. On psychiatric exam, he was oriented and had normal insight and judgment. Mood and affect were appropriate. His prescriptions for Flexeril, Motrin, and Xanax were renewed. (Tr. 322-326).

Dr. Raymond Leung performed a consultative physical exam at the request of the agency in August 2012. Plaintiff was 69 inches tall and weighed 230 pounds. His back was nontender. His gait was normal, and he was able to walk 50 feet unassisted. He could toe walk, heel walk, and squat 1/2 of the way down. There was no muscle spasm or atrophy. Range of motion of the hips was normal. Range of motion of the lumbar spine was normal except that extension (bending backwards) was reduced from 25 degrees to 10 degrees. An x-ray showed no evidence of lumbar disease. (Tr. 313-319).

Dr. Leung examined Plaintiff again in December 2013. Plaintiff was again alert and oriented and memory was intact. Physical findings were essentially the same as before. There was again no muscle spasm or atrophy. Range of motion of the hips was normal. Range of motion of the lumbar spine was normal except that extension (bending backwards) was reduced from 25 degrees to 10 degrees. Dr. Leung completed an RFC assessment stating that Plaintiff was limited to walking for 1 hour at a time and for a total of 2 hours per day. He was limited to standing for 2 hours at a time for 4 hours total per day. He could sit for 8 hours a day and was limited to only occasional operation of foot controls. (Tr. 335-347).

Stephen G. Vincent, PhD., performed a consultative psychological exam in December 2013. Dr. Vincent concluded that Plaintiff had good capacity to carry out simple one to two step instructions, and fair ability to relate to supervisors, co-workers, and the general public and to adapt to changes. Dr. Vincent completed a mental RFC assessment form. (Tr. 328-333).

Plaintiff began seeing Dr. Michael Granger, a primary care physician, in October

2013. He saw Plaintiff four times through February 2014 for back pain and anxiety. He prescribed Flexeril, Zoloft, and ibuprofen. The notes contain minimal results of mental or physical exams. X-rays taken in March 2014 showed osteoarthritis of the right hip and minimal osteoarthritis in the lumber spine. In April 2014, Dr. Granger noted Plaintiff "still" had agoraphobia and had "significant OA of the right hip." (Tr. 348-359, 733-738).

Plaintiff did not see Dr. Granger again until March 2015. He had eleven visits between March 2015 and June 2017. Dr. Granger continued to treat Plaintiff with medication, including Zoloft for anxiety and Flexeril and Mobic for back pain. His notes indicate back and hip pain upon ROM, but do not give any details. (Tr. 710-732). An MRI in January 2016 showed broadbased disc protrusion at L4-5 and L5-S1 without central or foraminal canal stenosis and mild facet joint hypertrophy. (Tr. 749-750).

Dr. Vincent examined Plaintiff again in July 2017. Plaintiff told Dr. Vincent that he had low back pain radiating down both legs. He walked with a limp. On mental status exam, his mood was euthymic (normal), he was oriented, and had normal perception and thought content. He was cognitively logical, coherent, and relevant. Dr. Vincent rated him as having only mild limitations in all areas of functioning, including ability to carry out simple instructions, make simple work-related decisions, and to interact with the public, co-workers, and supervisors. (Tr. 761-767).

Dr. Leung examined Plaintiff again on the same day. Plaintiff said that he had bulged and herniated discs but had no surgeries or injections. On exam, he walked with a slight limp, but was able to walk 50 feet unassisted. He was able to toe walk, heel walk,

and squat 1/4 of the way down. There was no muscle spasm or atrophy. Range of motion of the right hip was limited, and range of motion of the lumbar spine was slightly decreased. Dr. Leung again completed an RFC assessment stating that Plaintiff was limited to walking for 1 hour at a time and for a total of 2 hours per day. He was limited to standing for 2 hours at a time for 4 hours total per day. He could sit for 8 hours a day and was limited to only occasional operation of foot controls. He did not need to use a cane. (Tr. 769-780).

There are notes from visits with Dr. Granger in September and October 2017, and May and July 2018. (Tr. 781-790, 806-813). The September 2017 note reports a "normal exam" except for tenia pedis, *i.e.*, athlete's foot. (Tr. 784). In May 2018, he had mild back pain with range of motion. The doctor suspected sciatica. He again prescribed ibuprofen and a muscle relaxer. (Tr. 808). In July 2018, an exam showed low back pain with range of motion and tenderness to palpation. Plaintiff was using a borrowed cane to walk. The doctor suspected sciatica and prescribed a cane. He continued him on ibuprofen and a muscle relaxer. His affect was not as flat as usual. Dr. Granger continued him on Zoloft. (Tr. 812).

## ANALYSIS

Plaintiff's third and fourth arguments are plainly incorrect. The jobs identified by the VE and accepted by the ALJ do not require driving or customer contact. This is established by both the testimony of the VE and by the job listings in the *Dictionary of Occupational Titles*. And, at age 49, Plaintiff would not be deemed disabled under the Grids even if he were limited to sedentary work. He certainly would not be deemed

disabled if he were limited to light work. *See* Medical-Vocational Guidelines, 20 C.F.R. § Pt. 404, Subpt. P, App. 2. Plaintiff also asserts that there was no "dialogue" to establish that he could work for an 8-hour day. This is also incorrect in that Dr. Munoz's RFC assessment established that he could meet the demands of an 8-hour workday. Further, it was Plaintiff's burden to demonstrate disability, not the Commissioner's burden to disprove disability.

Plaintiff argues that the transcript of the first hearing was inaccurate, citing to Ex. 24E, located at Tr. 676. That exhibit is a copy of the brief that Plaintiff filed in the appeal of the first ALJ's decision. According to Plaintiff, the transcript of the first hearing omitted a statement by Dr. Reid that said, "I don't believe [Plaintiff] should be around people in any environment." The ALJ considered and rejected Plaintiff's assertion that Dr. Reid made that statement, since the alleged statement would be inconsistent with the rest of Dr. Reid's testimony. The ALJ also explained that such a statement would be inconsistent with the rest of the evidence, especially with Plaintiff's daily activities. (Tr. 407). Plaintiff asserts here that he recalls Dr. Reid making that statement but does not engage with the ALJ's reasoning. This point is denied.

Without elaboration, Plaintiff characterizes the ALJ's weighing of the medical opinions as "classic cherry-picking." An ALJ impermissibly cherry-picks the evidence when she analyzes only the evidence that supports her ultimate conclusion but ignores the evidence that undermines it. *See Moore v. Colvin*, 743 F.3d 1118, 1123 (7th Cir. 2014). The ALJ did not do that here. Rather, she fairly analyzed the medical and other evidence, and weighed the medical opinions. Significantly, Plaintiff points to no

favorable evidence that was ignored by the ALJ.

The ALJ was required to weigh the medical opinions using the factors set forth in 20 C.F.R. § 404.1527(c). Supportability and consistency are two important factors to be considered in weighing medical opinions. *See Schaaf v. Astrue*, 602 F.3d 869, 875 (7th Cir. 2010). An ALJ can give less weight to a doctor's opinion if it is internally inconsistent or inconsistent with other substantial evidence as long as he articulates his reasons for doing so. *See Punzio v. Astrue*, 630 F.3d 704, 710 (7th Cir. 2011). The ALJ did not base her RFC assessment on any one opinion as a whole, but she was not required to do so. The determination of a claimant's RFC is an administrative function reserved to the ALJ. *See* 20 C.F.R. § 416.946(c). In making the RFC assessment, the ALJ "is not required to rely entirely on a particular physician's opinion or choose between the opinions of any of the claimant's physicians." *Schmidt v. Astrue*, 496 F.3d 833, 845 (7th Cir. 2007).

The ALJ explained the weight she gave to the medical opinions at Tr. 404-409. Plaintiff offers no specific criticism of the ALJ's conclusions except to say that not enough consideration was given to Dr. Vincent's findings. The ALJ thoroughly discussed Dr. Vincent's two reports at Tr. 408, noting that in his 2013 report, Dr. Vincent found moderate and mild limitations, but only mild limitations after his examination in 2017. She noted some internal inconsistencies in the 2013 report, and reasonably concluded that the 2017 report was both internally consistent and consistent with other evidence in the record, including Plaintiff's level of daily functioning and his ability to complete his college degree. Plaintiff has not demonstrated any error here.

Plaintiff's last point offers nothing beyond what has already been discussed.

The Court has carefully reviewed the record and the ALJ's decision and has not detected any legal errors. The medical evidence and the opinion evidence support the conclusion that Plaintiff was capable of doing some light exertion jobs as of the date of the ALJ's decision. Even if reasonable minds could differ as to whether Plaintiff was disabled at the relevant time, the ALJ's decision must be affirmed if it is supported by substantial evidence, and the Court cannot substitute its judgment for that of the ALJ in reviewing for substantial evidence. *See Burmester,* 920 F.3d at 510; *Shideler v. Astrue,* 688 F.3d 306, 310 (7th Cir. 2012).

## CONCLUSION

After careful review of the record as a whole, the Court is convinced that the ALJ committed no errors of law, and that her findings are supported by substantial evidence. Accordingly, the final decision of the Commissioner of Social Security denying Plaintiff's application for disability benefits is **AFFIRMED**.

The Clerk of Court is directed to enter judgment in favor of defendant.

**IT IS SO ORDERED.**

DATE: March 24, 2020.

Digitally signed by Judge Sison
Date: 2020.03.24 09:19:47 -05'00'

GILBERT C. SISON
**United States Magistrate Judge**